## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| AIR FORCE MAJOR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: |
| | ) | |
| **LLOYD J. AUSTIN, III**, | ) | **COMPLAINT** |
| Individually and in his official capacity as | ) | |
| United States Secretary of Defense; UNITED | ) | |
| STATES DEPARTMENT OF DEFENSE; | ) | |
| **FRANK KENDALL**, individually and in | ) | |
| his official capacity as United States Secretary | ) | |
| of the Air Force, **ROBERT I. MILLER,** | ) | |
| individually and in his official capacity as | ) | |
| Surgeon General of the Air Force, | ) | |
| General **ARNOLD W. BUNCH, JR.**, | ) | |
| individually and in his official capacity as | ) | |
| Commander, Air Force Material Command, | ) | |

Defendants.

Plaintiff, Air Force Major, (hereinafter "Plaintiff"), by and through his attorneys, Tully Rinckey, PLLC, as and for his Complaint against the defendants, Lloyd J. Austin, III, in his individual and official capacity as United States Secretary of Defense, Frank Kendall, in his individual and official capacity as United States Secretary of the Air Force, Robert I. Miller, individually and in his official capacity as Surgeon General of the Air Force, and General Arnold W. Bunch, Jr. individually and in his officially capacity as Commander, Air Force Material Command (collectively "Defendants"), alleges the following:

## INTRODUCTION

1.      Plaintiff is a Major in the Untied States Air Force Reserve who is opposed and has objected to receiving the COVID-19 vaccination based upon his sincerely held religious beliefs.

2.      This action is based upon the United States Constitution, the Religious Freedom Restoration Act of 1993, the Administrative Procedure Act, Department of Defense regulations, and Department of the Air Force regulations, concerning the denial of Plaintiff's fundamental right to the free exercise of religion and protection from agency action that is unlawful, contrary to law, and arbitrary and capricious.

3.      Plaintiff challenges the policies and actions detailed below on their face and as applied to Plaintiff.

4.      Defendants' policies and actions have and will continue to deprive Plaintiff of his inalienable rights and guarantees under the United States Constitution and federal law.

5.      Defendants committed each and every act alleged herein under the color of law and authority.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

7.      This Court has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

8.      This Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

9.      This Court has jurisdiction under 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise has been burdened by Defendants.

10.     This Court has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. § 701-706.

11.     This Court has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

12.     This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1 and *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); the requested declaratory relief pursuant to 28 U.S.C. §§2201-02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

13.     Venue is proper in this district court pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, Plaintiff resides in Dallas, Texas and no real property is involved in this action.

## PLAINTIFF

14.     Plaintiff is a resident of Dallas, Texas.

15.     Plaintiff graduated from the United States Air Force Academy in 2006 with a degree in Aeronautical Engineering.

16.     Plaintiff entered active-duty as commissioned officer in the United States Air Force and served honorably from 2006-2017.

17.     Plaintiff has served in the United States Air Force Reserve since 2017 and has attained the rank of O-4, Major.

18.     Plaintiff has served in the United States Air Force for approximately sixteen (16) years and is approximately four (4) years shy of reaching retirement eligibility.

19.     Plaintiff is stationed at Air Force Material Command (hereinafter "AFMC"), Air Force Lifecycle Management Center, Tinker Air Force Base, Oklahoma.

20.     Plaintiff is a member of the Individual Mobilization Augmentee program.

21.     Plaintiff serves as a Program Manager for the B-52 Commercial Engine Replacement program.

22.     Plaintiff has been performing his military duties remotely at his residence in Dallas, Texas since the start of the COVID-19 pandemic, in or around March 2020. Upon information and belief, Plaintiff's performance has not suffered during this time period.

23.     Plaintiff applied for a religious accommodation to the COVID-19 vaccination requirement on or around September 14, 2021. Plaintiff's request was predicated upon his Jewish faith and sincere belief that receiving immunizations derived from fully synthetic deoxyribonucleic acid (hereinafter "DNA") would be a violation of his faith. Plaintiff believes that mRNA vaccines are fully synthetic. Plaintiff believes that injecting synthetic substances—substances not created by the work of the Lord—is a violation of the teachings of his Faith. Plaintiff believes that mankind is made in the image of the Lord and injecting synthetic substances would result in him defiling his body. Plaintiff  believes that the Lord has blessed his body with the ability to heal and recover from any injury, illness, or disease he may incur. Plaintiff believes that natural immunity arising from prior infection provides greater protection than vaccine induced immunity and that relying upon natural immunity is consistent with the teachings of his faith. Plaintiff has previously contracted and recovered from COVID-19 infection and has developed natural immunity as a result of his prior infection. Plaintiff believes in the teachings of Deuteronomy 9-15 "Who keeps the covenant…keeps His commandments…you shall be blessed above all peoples…and the Lord will remove you from illness." Plaintiff believes that receiving a COVID-19 vaccine will cause him to suffer unknown and harmful side effects. Plaintiff believes that knowingly harming his body would be against his religion. Plaintiff relies upon his interpretation of Leviticus 19:28 to support this belief: "you must not make any cuts in your bodies for the dead or put tattoo marks

on yourself. I am the LORD." Plaintiff further believes that he can not provide informed consent to any of the COVID-19 vaccines due to a lack of longitudinal studies on the potential harmful side effects of the vaccine. Plaintiff believes that mandating medical treatment without his informed consent would be a violation of the Nuremberg Code.

24.     Plaintiff's request for a religious accommodation was favorably endorsed by a military chaplain, who opined that Plaintiff's request was sincere and was not made with any alternative agenda.

25.     Plaintiff's request for a religious accommodation was denied on December 3, 2021, by Major General Arnold W. Bunch, Jr. (hereinafter "Gen Bunch"). Gen Bunch was the initial approval authority for Plaintiff's religious accommodation request.

26.     Plaintiff appealed the denial of his religious accommodation request to the designated appellate authority, Lieutenant General Robert I. Miller (hereinafter "Lt Gen Miller"), Air Force Surgeon General. Plaintiff's appeal was ultimately denied on January 6, 2022.

27.     Plaintiff was issued a Letter of Reprimand (hereinafter "LOR") by Colonel Charles B. Cain (hereinafter "Col Cain") on or around February 14, 2022, for failing to obtain the required COVID-19 immunization.

28.     Plaintiff will be involuntarily transferred to the Individual Ready Reserves (hereinafter "IRR") in a no-pay, no-points status in the near future if he does not receive a COVID-19 vaccine.

29.     Plaintiff's involuntary transfer to the IRR will cause him to lose health care coverage and will render him ineligible for promotion. Upon information and belief, Plaintiff's involuntary transfer to the IRR will eventually culminate in his separation from the United States Air Force prior to attaining twenty (20) years of service needed for retirement eligibility.

30.    Plaintiff has a security clearance. Upon information and belief, Plaintiff's security clearance will be adversely affected by the actions of the Defendants and may be revoked. Upon information and belief, a revocation of Plaintiff's security clearance will have adverse impacts on his current civilian employment with a large defense contractor.

31.    Plaintiff has been granted a religious accommodation to the COVID-19 vaccination requirement by his civilian employer. Upon information and belief, Plaintiff is required to have a negative COVID-19 test approximately seventy-two (72) hours prior to entering any facility owned and/or operated by his civilian employer. Upon information and belief, Plaintiff is required to wear a face mask at all times while present in any building owned and/or operated by his civilian employer. Upon information and belief, Plaintiff is also required to practice social distancing as part of the religious accommodation granted by his civilian employer.

**DEFENDANTS**

32.    Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members, including Plaintiff. Secretary Austin is a named defendant and is being sued in his individual and official capacity.

33.    United States Department of Defense (hereinafter "DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

34.    Defendant Frank Kendall is the United States Secretary of the Air Force. Secretary Kendall issued a directive on September 3, 2021, which required the U.S. Air Force to vaccinate

all U.S. Air Force service members, including Plaintiff. Secretary Kendall is sued in his individual and official capacities.

## FACTUAL BACKGROUND

### The President's Order to Vaccinate the Armed Forces

35.     On or about July 29, 2021, the President of the United States directed DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actins-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann Meyers and Howard Altman, *Military Times*, Oct. 21, 2021, https://www.militarytimes.com/news/your-military/2021/07/09/biden-orders-pentagon-to-consider-mandatory-covid-19-vaccination/.

### The Department of Defense Vaccine Mandate

36.     On August 24, 2021, Secretary Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (hereinafter the "Vaccine Mandate"). A true and correct copy of the Vaccine Mandate is attached as Exhibit 1 to this Complaint.

37.     The Vaccine Mandate directs the DoD to vaccinate all active duty and reserve service members against COVID-19.

38.     The Vaccine Mandate states that service members who previously contracted COVID-19, and now have antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

39.     The Vaccine Mandate, by excluding prior documented infection as grounds for an exemption, altered existing policy without providing for a comment period.

40.     The Vaccine Mandate requires that the DoD only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration (hereinafter "FDA"), in accordance with FDA-approved labeling and guidance.

41.     The Vaccine Mandate provides that service members who are actively participating in COVID-19 clinical trials are exempted from the Vaccine Mandate until the clinical trial is complete.

42.     The Vaccine Mandate states that the DoD will implement the Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.

43.     The Vaccine Mandate states that the Military Departments, to include the Air Force, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

44.     The Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

45.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by the established arbitrary deadlines will be subjected to immediate adverse actions as directed by their respective service components. The adverse actions may include: court-martial prosecution, involuntary separation, relief for case form leadership positions,

administrative reprimands, loss of special pay, placement in a non-deployable status, recoupment of money spent on training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

## The Air Force's Vaccine Mandate

46.    On September 3, 2021, Secretary Kendall issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members" (hereinafter "the Air Force Vaccine Mandate") (collectively, the DoD Vaccine Mandate and the Air Force Vaccine Mandate are the "Vaccine Mandates").  A true and correct copy of the Air Force Vaccine Mandate is attached at Exhibit 2 to this Complaint.

47.    The Air Force Vaccine Mandate incorporates by reference the DoD Vaccine Mandates provisions and the Department of the Air Force COVID-19 Vaccination Implementation Guidance, dated September 2, 2021. A true and correct copy of the Guidance is attached at Exhibit 2 to this Complaint.

48.    The Air Force Vaccine Mandate directs all active duty Airmen and Guardians to be fully vaccinated against COVID-19 by November 2, 2021, and directs all members of the United States Air Force Ready Reserve, to include National Guard, Airmen and Guardians, to be fully vaccinated by December 2, 2021.

49.    The Air Force Vaccine Mandate states that commanders must take action "systematically and as expeditiously as possible to ensure prompt and fully vaccination of service members."

50.    The Air Force Vaccine Mandate states that "individuals with previous COVID-19 infection or positive serology are not considered fully vaccinated and are not exempt" from the Air Force Vaccine Mandate.

9

51.     The Air Force Vaccine Mandate provides that"[o]nly COVID-19 vaccines that receive full licensure form the Food and Drug Administration (FDA) will be utilized for mandatory vaccinations unless a military member volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency Use Authorization."

52.     The Air Force Vaccine Mandate states that initial disposition authority is withheld "from all commanders within the Department of the Air Force who do not possess at least special court-martial convening authority and who are not in the grade of O-6 with respect to any alleged offense that constitutes refusal or failure to obtain the COVID-19 vaccine" under Article 22 of the Uniform Code of Military Justice.

53.     Defendants have discretion in granting religious accommodations.  *See, e.g.,* Department of Defense Instruction (hereinafter "DoDI") 1300.17, Religious Liberty in the Military services, dated September 1, 2020; Department of the Air Force Instruction (hereinafter "AFI") 52-201, Religious Freedom in the Department of the Air Force, dated June 23, 2021, Department of the Air Force Policy Directive (hereinafter "AFPD") 52-2, Accommodation of Religious Practices in the Air Force, dated July 28, 2020; Air Force Instruction 1-1, Air Force Standards, dated August 7, 2012.

54.     Defendants have discretion in granting medical accommodations.  *See, e.g.,* Air Force Instruction 48-110, Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease, dated October 7, 2013.

55.     Plaintiff has served in the United States Air Force as a commissioned officer for approximately 16 years and has attained the rank of Major. His service has come at a great personal sacrifice to himself and his loved ones.

56.    On February 8, 2022, the Air Force stated that it had "approved eight religious accommodations and one religious accommodation appeal." Rachel Cohen, Air Force Approves First Religious Exemptions to COVID-19 Vaccine for 9 Troops, Air Force Times, Feb. 8, 2021, https://www.airforcetimes.com/news/your-air-force/2022/02/08/air-force-approves-first-religious-exemptions-to-covid-19-vaccine-for-9-troops/. That number was subsequently increased to thirteen (13) exemptions as of February 2022. The Air Force has acknowledged that "nearly 3,600 requests had been turned down at the major/field command level, and 682 had been denied on appeal." Greg Hadley, Air Force Grants More Religious Accommodations to Vaccine; Wright-Patt Officers File Lawsuit, Feb. 23, 2022, https://www.airforcemag.com/air-force-grants-religious-accommodations-vaccine-wright-patt-officers-lawsuit/. As set forth above, Defendants' policies grant wholesale exemptions to all personnel who are participating in a COVID-19 vaccine trial, regardless of whether their participation in the clinical trial has resulted in any protection against the virus.

57.    As of March 14, 2022, the Air Force reported that it had fully vaccinated 96.4% of its total force, to include Active Duty, Guard, and Reserve members. Upon formation and belief, the Air Force as fully vaccinated 98% of its active-duty force against COVID-19. Upon information and belief, the U.S. Air Force has granted approximately 1,164 medical exemptions and 1,500 administrative exemptions to the Vaccine Mandate. Upon information and belief, the U.S. Air Force has denied 4,212 religious accommodation requests at the major/field commander level and denied 1,037 appeals at the appellate level. Upon information and belief, the U.S. Air Force has separated 212 active-duty Airmen for refusing to comply with the Vaccine Mandate. Upon information and belief, the U.S. Air Force has lost fifteen (15) Airmen to death arising from COVID-19 infection. Upon information and belief, the U.S. Air Force has reported that over

ninety-one thousand (91,000) Airmen have been infected with COVID-19 since the start of the pandemic and approximately fifty-three (53) Airmen have been hospitalized as a result of COVID-19 infection. Secretary of the Air Force Public Affairs, DAF COVID-19 Statistics – March 15, 2022, https://www.af.mil/News/Article-Display/Article/2959594/daf-covid-19-statistics-march-15-2022/.

**Plaintiff's Sincerely Held Religious Objections to COVID-19 Vaccinations**

58.     Plaintiff is a member of the Jewish faith and has been actively involved in the practice of his faith throughout his entire life. Plaintiff has participated in Bar Mitzvah and observes all Jewish holidays. Plaintiff's faith is a strong part of his identity and that of his family. Plaintiff is active in his local synagogue and his children attend a faith based private school.

59.     Plaintiff's faith and religious convictions have only grown stronger throughout his life.

60.     Plaintiff believes that his body, through the power of the Lord, is able to heal itself from infection, disease, and injury. Plaintiff's belief is predicated upon religious teachings and scripture, and his interpretation of those teachings and religious scripture.

61.     Plaintiff believes that receiving the COVID-19 Vaccines using Messenger RNA (hereinafter "mRNA") technology will result in the manipulation of his DNA. Plaintiff believes that altering his DNA is a violation of his faith.

62.     The COVID-19 vaccines, both Pfizer and Moderna, utilize mRNA technology, which alters human cells and causes the human body to produce a spike protein that it would not have otherwise produced. *See* Centers for Disease Control, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (March 4, 2021).

63.     The COVID-19 vaccines have been found to cause serious adverse reactions, to include myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, inflammation of the heart tissue that is potentially fatal. *See* Patricia Kime, *DoD Confirms*: *Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html.

64.     Numerous medical professionals have recognized that the COVID-19 vaccines present significant health concerns. Theresa Long, M.D., M.P.H., F.HS., a Lieutenant Colonel (hereinafter "LTC") in the United States Army submitted a sworn affidavit, under penalty of perjury, as a whistleblower under the Military Whistleblower Protection Act, 10 U.S.C. § 1304, in support of a Motion for Preliminary Injunction in *Robert, et al. v. Austin, et al.,* 1:21-cv-02228-RM-STV (D. Colo., filed Aug. 17, 2021).

65.     In her affidavit, LTC Long expressed her expert medical opinion that:

"None of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity that an infection-recovered person."

"All three of the [Emergency Use Authorization] EUA COVID-19 vaccines…are more risky, harmful, and dangerous than having no vaccine at all, whether person is COVID-recovered or facing COVID infection."

"Direct evidence exists and suggests that all person who have received a COVID-19 Vaccine are damaged in their cardiovascular system in an irreparable an irrevocable manner."

66.     The opinion of LTC Long has been echoed by other medical professionals. Drs. Jayanta Bhattacharya and Martin Kulldoff, professors of medicine at Standard University and

Harvard Medical School, respectively, have stated that those who have recovered from COVID-19 infection "possess immunity as robust and durable as that acquired through vaccination." *Zywicki v. Washington,* 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021).  Dr. Hooman Noorchashm, M.D., Ph.D., a well-respected authority in the medical field, has stated that a "series of epidemiological studies have demonstrated to a reasonable degree of certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the most effective vaccines currently available." *Zywicki v. Washington*, 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021).

67.    Plaintiff was infected with COVID-19 in July 2021 and became symptomatic. He has confirmed his prior infection by undergoing an antibody test. Plaintiff has develop naturally immunity against COVID-19 due to his prior documented infection.

68.    Plaintiff believes that his religious beliefs and opposition to the COVID-19 vaccines does not automatically result in Plaintiff unnecessarily exposing himself or others to an increased risk of COVID-19 infection. Plaintiff has abided by and will continue to abide by well recognized mitigation measures, such as the wearing of face masks, exercising appropriate hygiene habits, physical distancing, undergoing COVID-19 testing when appropriate, and isolating after coming into close contact with a COVID-19 positive individual or when experiencing symptoms associated with COVID-19. Plaintiff is able to perform his military duties remotely, and his entire unit has been in a telework status since the start of the pandemic. Upon information and belief, Defendants continue to employ the mitigation techniques described above even though the Defendants have achieved a 96.4% vaccination rate amongst its total force.

**DoD and Air Force Recognize Religious and Medical Accommodations for Immunizations under the Religious Freedom Restoration Act of 1993 and the Free Exercise Clause**

69.     DoDI 1300.17, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD Policy in furtherance of the RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United Sates, and recognizes that all service members have the right to observe the tenets of their religion, or to observe no religion at all.

70.     DoDI 1300.17 states that it is DoD Policy that "Service members have the right to observe the tenets of their religious or to observe no religion at all, as provided in this issuance."

71.     DODI 1300.17 states "[i]n accordance with Section 553(a)(1) of Public Law 112-239, as amended, DOD Components will accommodate individual expressions of sincerely held religious beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training and assignment."

72.     DoDI 1300.17 states that an accommodation "includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

(1) The military policy, practice, or duty is in furtherance of a compelling governmental interest; and

(2) It is the least restrictive means of furthering that compelling governmental interest

73.     DoDI 1300.17 states that the "burden of proof is placed upon the DoD Component, not the individual requesting the exemption."

74.     DoDI 1300.17 defines the phrase "substantial burden" as a "governmental act [that] … requires participation in an activity prohibited by a sincerely held religious belief", as an act that "prevents participation in conduct motivated by a sincerely held religious belief; or places substantial pressure on a Service member to engage in conduct contrary to a sincerely held religious belief."

75.     Air Force Policy Directive (AFPD) 52-2, Accommodation of Religious Practices in the Air Force, dated July 28, 2020, incorporates DoDI 1300.17 and provides policy and guidance for the accommodation of religious practices within the Dept. of the Air Force.

76.     AFPD 52-2 states that "[t]he Air Force will approve an individual request for accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, or public health and safety."

77.     Air Force Instruction 48-110_IP, Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease, dated October 7, 2013, establishes Departmental policy and quality standards for immunization and chemoprophylaxis.

78.     AFI 48-110_IP, para. 2-6, provides for two types of exemptions from DoD immunization requirements; a medical and an administrative exemption.

79.     Among the several medical exemptions that are available to service members, one of those exemptions includes "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provide a basis for medical exemption.

80.    The administrative exemptions that are available to service members include those who are within 180 days of their separation or retirement date and those who are seeking religious accommodations.

81.    Air Force Instruction 52-201, Religious Freedom in the Department of the Air Force, dated June 23, 2021, states that "[a]s the right to request religious accommodation is based on the U.S. Constitution and federal statutes, it is critically important to fully consider and appropriately value an Airman's or Guardian's request."

82.    AFI 52-201, provides that "[c]ommanders may only impose limits on such expressions when there is a real (not theoretical) adverse impact on military readiness, unit cohesion, good order and discipline, health or safety of the member or the unit. Any imposed limitations will employ the least restrictive means possible on expressions of sincerely held religious beliefs."

**Defendants' Refusal to Grant Religious Exemptions**

83.    Plaintiff requested a religious accommodation to the Vaccine Mandates in September 2021. Plaintiff's request was predicated upon his sincerely held religious beliefs and opposition to the COVID-19 vaccines. Plaintiff's opposition was based upon the very same rationale referenced in Paragraph 23 of this Complaint.

84.     Plaintiff's request, like all those that were submitted before it, was denied. Plaintiff received the initial denial on December 3, 2021. The denial letter states that Plaintiff, "as an unvaccinated Airman,…will not immediately be able to deploy or travel worldwide, undermining… unit morale and ability to fully respond to mission or contingency requirements." The denial letter states that "not being fully vaccinated increases [Plaintiff's] risk for serious

illness, hospitalization, or even death from contracting COVID-19 and/or spreading it to others during this ongoing pandemic."

85.    The denial letter of December 3, 2021 acknowledges that Plaintiff had been and was continuing to telework. The denial letter states that Plaintiff's status as an unvaccinated individual places him "at much greater risk of contracting COVID-19 in [his] local community, thereby increasing the risk that [he] will not be able to fully perform [his] role in [his] unit's mission." A true and correct copy of this denial letter is attached at Exhibit 3 to this Complaint.

86.    The denial letter of December 3, 2021, states that "less restrictive means are insufficient to meet the compelling governmental interest in [Plaintiff's] vaccination because the totality of mitigation measures like 100% telework, social distancing, and masking at all times afford less health protection than vaccination, while mobility restrictions and delayed readiness stemming from the time needed to become fully vaccinated result in degraded operational effectiveness." Upon information and belief, the COVID-19 vaccine is not considered a mobility immunization. Upon information and belief, those individuals who have a medical exemption can still travel outside of the continental United States. Upon information and belief, the Status of Forces Agreement (hereinafter "SOFA") between the United States and other nations does not require that U.S. service members comply with host nation laws governing COVID-19 and vaccination.

87.    Plaintiff submitted a timely appeal to the denial letter of December 3, 2021. Plaintiff's appeal was submitted on or around December 14, 2021. Plaintiff's appeal was denied by Lt Gen Robert I. Miller, on January 6, 2022.

88.    The January 6, 2022, denial letter states that denial was appropriate because Plaintiff's "present duty assignment requires intermittent to frequent contact with others and is not

fully achievable via telework or with adequate distancing." The denial letter states that Plaintiff's "in-person meeting attendance requires prolonged, intermittent contact with multiple individuals, which would significantly impact mission accomplishment if [Plaintiff] were exposed or actively infected." A true and correct copy of this denial letter is attached at Exhibit 4 to this Complaint.

89.    Upon information and belief, Plaintiff's religious accommodation request and appeal were not actually reviewed by the decision authorities.

90.    Upon information and belief, prior to February 2022, the U.S. Air Force had denied every single religious accommodation request to the Vaccine Mandates.

91.    The U.S. Air Force has disapproved approximately 4,222 religious accommodation requests at the Major/Field Commander level and has denied approximately 1,037 appeals as of March 14, 2022.  The U.S. Air Force has only approved 23 religious accommodation requests as of March 14, 2022. Upon information and belief, these approvals did not occur until after several lawsuits regarding the Defendant's handling and processing of religious accommodation requests had been filed and increased public scrutiny was placed upon Defendants.

92.    The U.S. Air Force has approved a total of 1,164 medical exemptions across the Active Duty, Guard, and Reserve components as of March 14, 2022, and a total of 1,500 administrative exemptions to the Vaccine Mandates.

93.    Upon information and belief, the U.S. Air Force does not involuntarily transfer unvaccinated individuals who have acquired a medical exemption to the Vaccine Mandates to the IRR.

94.    Upon information and belief, the U.S. Air Force has approved approximately 1,641 more medical exemption request than religious accommodation requests.

95.     Upon information and belief, the U.S. Air Force is aware that individuals who are fully vaccinated against COVID-19 can still contract the virus. Upon information and belief, the Chairmen of the Joint Chiefs of Staff, U.S. Army General Mark A. Milley, contracted COVID-19 in January 2022 even though he is fully vaccinated against COVID-19 and has received a booster shot.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiff's Rights under the Religious Freedom Restoration Act of 1993**
**42 U.S.C. § 2000bb *et seq.***

96.     Plaintiff repeats and re-alleges each of the allegations set forth above in paragraphs 1-95 of this Complaint.

97.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et. seq.* (RFRA), states that the [g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

98.     The Act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious beliefs." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C § 2000-cc-5(7)(A)).

99.     In *Burwell v. Hobby Lobby Stores*, the Supreme Court of the United States stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014)(citing *Smith*, 494 U.S. at 877).

100.     The Supreme Court has repeatedly articulated that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

101.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

102.    DoDI 1300.17 explicitly recognizes RFRA protections for Department of Defense and Department of the Air Force service members.

103.    Unless the government satisfies the compelling interests test by "demonstrate[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means for furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental action violates RFRA.

104.    Plaintiff has sincerely held religious beliefs and cannot comply with the Vaccine Mandates without violating those beliefs.

105.    Defendants' Vaccine Mandates substantially burden Plaintiff's exercise of religion by requiring him to engage in action that is contrary to his sincerely held religious beliefs or risk suffering adverse employment action, financial harm, and potential confinement. Plaintiff has already suffered adverse employment action in the form of a permanently filed Letter of Reprimand (LOR) which documents his refusal to receive the COVID-19 vaccination.

106.    Upon information and belief, the LOR will result in Plaintiff receiving a Referred Officer Performance Report (OPR). Upon information and belief, the Referred OPR which will trigger Plaintiff's involuntary transfer to the IRR. Upon information and belief, plaintiff will be transferred in no-pay, no-points status and will be precluded from attaining the remaining four (4) years of military service needed to become eligible for retirement.

107.    Upon information and belief, Plaintiff will likely be passed over for promotion due to the LOR and Referred OPR being maintained in his permanent military personnel file. This will cause Plaintiff to suffer financial harm in the form of loss of pay and promotion.

108.    Upon information and belief, Plaintiff and his family will lose healthcare benefits if and when he is involuntarily transferred to the IRR.

109.    Upon information and belief, Plaintiff's security clearance will be adversely affected by Defendants actions.

110.    Upon information and belief, Plaintiff's civilian employment will be adversely affected by Defendants actions.

111.    Defendants' have claimed to have fully vaccinated approximately 96.4% of its force. Defendants' have achieved herd immunity and no longer possess a compelling interest in requiring Plaintiff to become fully vaccinated against COVID-19 in violation of Plaintiff's sincerely held religious beliefs.

112.    Upon information and belief, Defendants are aware that fully vaccinated individuals can still contract and transmit COVID-19.

113.    Upon information and belief, Defendants have conceded that Plaintiff's religious beliefs are sincere, and a substantial burden has been placed on Plaintiff's exercise of his religion.

114.    Upon information and belief, Defendants are aware that alternative measures exist for achieving Defendants' interests in mission readiness, good order and discipline, and the health and safety of other service members.

115.    Defendants' Vaccine Mandates fail strict scrutiny.

116.    Defendants' are not employing the least restrictive means available for accomplishing the government's purported interest because the Defendants have operated for nearly two years during the pandemic with a ready, healthy, and fully functional force that had not been fully vaccinated.

117.    Defendants' have employed alternative measures to the immunization requirement contained in the Vaccine Mandates prior to a vaccine ever being developed. These alternative

measures that were imposed by the Defendants and continue to be imposed, include masking, remote telework, physical distancing, and regular COVID-19 testing.

118.    Upon information and belief, Plaintiff's entire military unit has been teleworking since the beginning of the pandemic. Plaintiff continues to perform his military duties while being geographically separated from his military unit. Plaintiff's work performance has not dwindled even though he has not been physically present at Tinker Air Force Base.

119.    The Centers for Disease Control and Prevent has explicitly acknowledged that fully vaccinated individuals can still contract and transmit COVID-19 to other fully vaccinated and unvaccinated individuals. The Defendants have made the wearing of face coverings optional for fully vaccinated individuals despite the fact that those service members are still susceptible to infection. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html

120.    Defendants' denial of Plaintiff's request for a religious accommodation failed to establish that vaccination was the least restrictive means for achieving the government's asserted compelling interests.

121.    Defendants' policy and actions have caused Plaintiff to suffer, and will continue to cause plaintiff to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

122.    Plaintiff is entitled to a declaration that the Defendants violated Plaintiff's rights under the RFRA to the free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the

evidence and this Court and the reasonable cost of this lawsuit, including their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Right to the Free Exercise of Religion
### Involuntary Transfer to IRR
### U.S. Const. amend. I

123.    Plaintiff repeats and re-alleged each and every allegation contained above in paragraphs 1-122 of this Complaint.

124.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or polices unless they are narrowly tailored to a compelling government interest.

125.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means available to achieve the asserted compelling interest.

126.    Plaintiff has sincerely held religious beliefs that prohibit him from receiving any of the presently-available COVID-19 vaccines due to their use of mRNA technology. Plaintiff firmly believes that injecting synthetic materials, such as the COVID-19 vaccines, into his body will violate the teachings of his faith. Plaintiff believes that his body has the power to heal itself from any illness, injury, or disease he may incur and that this power is a blessing from the LORD. Plaintiff believes that natural immunity provides greater protection than vaccine induced immunity. Plaintiff has previously contracted and recovered from COVID-19. Plaintiff believes that relying upon the natural immunity he has developed as a result of his prior infection will provide greater protection and is consistent with the teachings of his faith.

127.    Defendants have conceded that Plaintiff's religious beliefs are sincere.

128.    Defendants have imposed vaccination requirements that substantially burden Plaintiff's religious beliefs by requiring Plaintiff to receive a COVID-19 vaccine in violation of his religious beliefs, or face adverse administrative action and financial harm, to include involuntary transfer to the IRR in a no-pay, no-points status.

129.    The adverse actions that Plaintiff is subject to can include: court-martial (criminal) prosecution, involuntary separation and/or transfer to the IRR in a no-pay, no-points status, removal from promotion lists, receipt of a LOR and referred OPR, and discharge from military service.

130.    Defendants have published guidance which allows unvaccinated service members with a  pending retirement date on or before 1 April 2022, to remain unvaccinated without being transferred to the IRR.

131.    Defendants' Vaccine Mandates are not a neutral and generally applicable law or policy. The Policy vests DoD and Air Force officials with discretion to exempt service members from the Vaccine Mandates for medical reasons and to exempt service members already participating in COVID-19 clinical trials, regardless of whether those clinical trials provide those service members with any protection from infection or serious illness from COVID-19. Those service members participating in clinical trials are not involuntarily transferred to the IRR during their participation in those trials even though they may pose the same risk to the asserted compelling interests of the government as those unvaccinated service members pose.

132.    Defendants' Vaccine Mandates fail strict scrutiny.

133.    Defendants have achieved herd immunity via a 96.4% full vaccination rate amongst the entire U.S. Air Force and do not have a compelling government interest in requiring Plaintiff to violate his sincerely held religious beliefs.

134.    Defendants' Vaccine Mandates are not the least restrictive means of accomplishing their asserted interests as demonstrated by the Defendants' successful operation for over a year with a fully mission ready force prior to the development of a COVID-19 vaccine.

135.    Defendants possess multiple, less restrictive, means of mitigating the spread of COVID-19. These means include masking, remote teleworking, physical distancing, and regular testing and reporting of the development of any symptoms associated with COVID-19.

136.    Defendants are aware that vaccination against COVID-19 does not preclude or otherwise prevent a fully vaccinated individual from contracting and spreading the virus.

137.    Accordingly, Defendants' Vaccine Mandates violate Plaintiff's rights to the free exercise of his religion under the First Amendment of the Constitution of the United States of America.

138.    As a result of Defendants' policies and actions, Plaintiff has suffered and continues to suffer irreparable harm. Plaintiff is entitled to equitable relief.

139.    Plaintiff is entitled to a declaration that the Defendants' have violated Plaintiff's First Amendment right to the free exercise of religion and an injunction against Defendants' policy and actions. Plaintiff is entitled to the reasonable cost of this lawsuit, including his reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
<u>Violation of Plaintiff's Rights Under the Administrative Procedure Act</u>
<u>Agency Action Not in Accordance with Law</u>
<u>5 U.S.C. §§ 701-06</u>

140.    Plaintiff repeats and re-alleges each of the aforementioned allegations contained in paragraphs 1-139 of this Complaint.

141.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained herein are each a "rule" under the APA, *id.* § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

142.    The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The Vaccine Mandates, as applied to Plaintiff, are not in accordance with the law.

143.    The RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

144.    DoDI 1300.17 and AFPD 52-02 explicitly recognize RFRA protections for DoD and Department of the Air Force service members.

145.    Unless the agency satisfies the compelling interest test by "demonstrate[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), then the agency action violates RFRA.

146.    Defendants' Vaccine Mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring him to engage in conduct—receiving the COVID-19 mRNA vaccines—that is contrary to his sincerely held religious beliefs or suffer adverse employment

action and financial harm. Plaintiff has already suffered adverse employment action arising from his refusal to violate his sincerely held religious beliefs and will continue to suffer from adverse employment actions and financial harm in the future.

147.    Plaintiff will be involuntarily transferred to the IRR in a no-pay, no-points status. Plaintiff will lose access to healthcare benefits as a result of this involuntary transfer. Plaintiff will not be eligible to obtain four (4) satisfactory years needed in order for him to obtain twenty (20) good years for retirement eligibility. Plaintiff will not be able to transfer his Post 9-11 GI Bill education benefits to his children as a result of Defendants actions.

148.    The adverse actions to which plaintiff has already suffered include Plaintiff's receipt of a Letter of Reprimand, which was placed in his permanent military personnel file.

149.    Further adverse actions to which Plaintiff is subject to may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, a referred Officer Performance Report, involuntary transfer to the Individual Ready Reserve in a no points no pay status, removal from promotion lists, inability to attend certain military training and educational schools, loss of special pay, placement in a non-deployable status, loss of leave and travel privileges and loss of pay.

150.    Plaintiff received a LOR and will receive a referred OPR in the near future as a direct result of the LOR. Plaintiff will be involuntarily transferred to the IRR in a no-pay, no-points status per guidance issued by the Defendants. Plaintiff will suffer financial harm in the form of lost pay and will not be able to earn retirement points while in this status. Plaintiff will likely be non-recommended for promotion and/or may be removed from a promotion list. Plaintiff will loss access to healthcare benefits as a result of Defendants actions.

151.    Defendants have achieved a 96.4% full vaccination rate across all three components of the United States Air Force as a result of their Vaccine Mandates. Defendants no longer possess a compelling governmental interest in requiring Plaintiff to violate his sincerely held religious beliefs by forcing Plaintiff to receive a COVID-19 vaccine

152.    Defendants are required to utilize the least restrictive means available for achieving their asserted compelling interests. Defendants' Vaccine Mandates are not the least restrictive means of accomplishing their alleged interests because the Defendants have successfully operated for over a year before the development of any COVID-19 vaccine.

153.    Defendants possess numerous, less restrictive, methods for mitigating the spread of COVID-19. These methods include masking, remote teleworking, physical distancing, regular testing and reporting of symptoms associated with COVID-19 infection.

154.    Plaintiff has been teleworking remotely for nearly two years and has successfully performed his duties during this time period even though he remains unvaccinated.

155.    For the reasons set forth above, the Defendants' Vaccine Mandates are not in accordance with the law withing the meaning of 5 U.S.C. § 706(2)(A), as they violate Plaintiff's rights under RFRA.

156.    Plaintiff has no adequate or available administrative remedy, or in the alternative, any effort to obtain administrative relief would be futile.

157.    Plaintiff has no adequate remedy at law.

158.    Plaintiff will continue to suffer harm as a result of Defendants' Vaccine Mandates absent injunctive and declaratory relief.

159.    The Court should declare the Defendants' Vaccine Mandates and the denial of Plaintiff's religious accommodation request invalid and set them aside.

**FOURTH CAUSE OF ACTION**
<u>**Violation of Plaintiff's Rights Under the Administrative Procedure Act**</u>
<u>**Agency Action that is Contrary to a Constitutional Right**</u>
<u>**(5 U.S.C. §§ 701-706)**</u>

160.    Plaintiff repeats and re-alleges each of the aforementioned allegations contained in paragraphs 1-159 of this Complaint.

161.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained herein are each a "rule" under the APA, *id.* § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

162.    The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The Vaccine Mandates, as applied to Plaintiff, are not in accordance with the law.

163.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or polices unless they are narrowly tailored to a compelling government interest.

164.    Plaintiff has sincerely held religious beliefs that prohibit him from receiving any of the presently-available COVID-19 vaccines due to their use of mRNA technology. Plaintiff believes that injecting unnatural substances, such as synthetic DNA, into his body is against the teachings of his faith. Plaintiff believes that mankind is created in the image of the Lord and injecting synthetic substances into his body would result in Plaintiff defiling his body. Plaintiff further believes that the Lord has blessed him with the ability to naturally heal and recover from any injury, illness, or disease he incurs. Plaintiff has previously contracted and recovered from COVID-19. Plaintiff believes that natural immunity arising from prior

30

infection provides greater protection that vaccine induced immunity, and that relying upon natural immunity for protection is consistent with the teachings of his faith.

165.    Defendants have conceded that Plaintiff's religious beliefs are sincere.

166.    Defendants have imposed vaccination requirements that substantially burden Plaintiff's religious beliefs by requiring Plaintiff to receive a COVID-19 vaccine in violation of his religious beliefs, or face adverse administrative action and financial harm, to include involuntary transfer to the IRR in a no-pay, no-points status.

167.    The adverse actions that Plaintiff is subject to may include: court-martial (criminal) prosecution, involuntary separation and/or transfer to the IRR in a no-pay, no-points status, removal from promotion lists, receipt of a LOR and referred OPR, and discharge from military service.

168.    Defendants have published guidance which allows unvaccinated service members with a pending retirement date on or before 1 April 2022, to remain unvaccinated without being transferred to the IRR.

169.    Defendants' Vaccine Mandates are not a neutral and generally applicable law or policy. The Policy vests DoD and Air Force officials with discretion to exempt service members from the Vaccine Mandates for medical reasons and to exempt service members already participating in COVID-19 clinical trials, regardless of whether those clinical trials provide those service members with any protection from infection or serious illness from COVID-19. Those service members participating in clinical trials are not involuntarily transferred to the IRR during their participation in those trials even though they may pose the same risk to the asserted compelling interests of the government as those unvaccinated service members pose.

170.    Defendants' Vaccine Mandates fail strict scrutiny.

171.   Defendants have achieved herd immunity via a 96.4% full vaccination rate amongst the entire U.S. Air Force and do not have a compelling government interest in requiring Plaintiff to violate his sincerely held religious beliefs.

172.   Defendants' Vaccine Mandates are not the least restrictive means of accomplishing their asserted interests as demonstrated by the Defendants' successful operation for over a year with a fully mission ready force prior to the development of a COVID-19 vaccine.

173.   Defendants possess multiple, less restrictive, means of mitigating the spread of COVID-19. These means include masking, remote teleworking, physical distancing, and regular testing and reporting of the development of any symptoms associated with COVID-19.

174.   Plaintiff has been teleworking remotely from his residence in Dallas, Texas for approximately two years. Upon information and belief, Plaintiff's performance has not diminished even those he is not physical present at Tinker Air Force Base.

175.   Defendants are aware that vaccination against COVID-19 does not preclude or otherwise prevent a fully vaccinated individual from contracting and spreading the virus.

176.   For the reasons sets forth above, Defendants' Vaccine Mandates are contrary to a constitutional right within the meaning of 5 U.S.C. § 706(2)(B) as they violate Plaintiff's rights under the First Amendment.

177.   Plaintiff has no adequate or available administrative remedy, or in the alternative, any effort to obtain an administrative remedy would be futile.

178.   Defendants' Vaccine Mandates have caused Plaintiff to suffer harm. Plaintiff will continue to suffer harm absent injunctive and declaratory relief against Defendants' Vaccine Mandates.

179.   As a result of Defendants' policies and actions, Plaintiff has suffered and continues to suffer irreparable harm. Plaintiff is entitled to equitable relief.

180.    The Court should declare the Vaccine Mandates and each of the Defendants' decisions invalid and set them aside.

**FIFTH CAUSE OF ACTION**
**Violation of Plaintiff's Rights Under the Administrative Procedure Act**
**Agency Action that Is Arbitrary, Capricious, or an Abuse of Discretion**
**(5 U.S.C. §§ 701-06)**

181.    Plaintiff repeats and re-alleges each of the aforementioned allegations contained in paragraphs 1-180 of this Complaint.

182.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained herein are each a "rule" under the APA, *id.* § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

183.    The APA prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Defendants' Vaccine Mandates and the Defendants' actions implementing the Vaccine Mandates are arbitrary, capricious, and an abuse of discretion for several reasons.

184.    AFI 52-501 allows a Airmen to seek a religious "exemption of immunization requirements from their MAJCOM, Field Command, DUR or FOA commander."

185.    AFI 48-110_IP, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, established DoD-wide policy and quality standards for immunizations and chemoprophylaxis.

186.    AFI 48-110_IP, Paragraph 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative.

187.    Among the numerous medical exemptions available to service members, includes exemption those where the service member has "evidence of immunity based on serologic tests, documented infection, or similar circumstances."

188.    AFI 52-501, Paragraph 2.2 states "the right to request a religious accommodation is based on the U.S. Constitution and federal statutes, it is critically important to fully consider and appropriately value an Airman's or Guardian's request.

189.    AFI 52-201, Paragraph 2.3 provides that "[t]he Department of the Air Force will approve a member's request for religious accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, health or safety."

190.    Air Force Policy Directive (AFPD) 52-2, Accommodation of Religious Practices in the Air Force, dated July 28, 2020, incorporates DoDI 1300.17 and provides policy and guidance for the accommodation of religious practices within the Dept. of the Air Force.

191.    AFPD 52-2 states that "[t]he Air Force will approve an individual request for accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, or public health and safety."

192.    RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

193.    The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

194.    In *Burwell v. Hobby Lobby Stores,* the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical

acts that are engaged in for a religious reason." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (citing *Smith*, 494 U.S. at 877).

195.    The Supreme Court has repeatedly articulated that courts may not question whether an individual's religious beliefs are reasonable. *Hobby Lobby,* 573 U.S. at 714.

196.    RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

197.    DoDI 1300.17 and AFPD 52-2 recognize RFRA protections for Department of Defense and Department of the Air Force service members.

198.    Unless the government satisfies the compelling interest test by "demonstrate[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

199.    By refusing to perform an individualized assessment that demonstrates that the application of the burden to the person making each request for a religious accommodation under RFRA and AFI 52-201 is necessary to further a compelling governmental interest, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

200.    By failing to recognize that Plaintiff has been teleworking remotely for approximately two years, has developed naturally immunity as a result of this prior infection, and that less restrictive means exists for achieving the asserted governmental interests, Defendants have acted in a manner that is arbitrary, capricious and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

201.   By using speculative assumptions and theoretical possibilities to justify denying Plaintiff's religious accommodation request, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

202.   By exempting service members from the Vaccine Mandates for medical reasons, to include exemption service members participating in clinical trials, regardless of whether those clinical trials provide those service members with any protection from infection or serious illness from COVID-19, without involuntarily transferring those service members to the IRR, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 716(2)(A).

203.   Plaintiff has no adequate or available remedy administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

204.   Plaintiff has no adequate remedy at law.

205.   Plaintiff has suffered and will continue to suffer harm as a result of the Defendants' Vaccine Mandates and arbitrary and capricious actions absent injunctive and declaratory relief.

206.   The Court should declare the Vaccine Mandates and each of Defendants' decision invalid and set them aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgement against Defendants and provide Plaintiff with the follow relief:

(A)   A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the First Amendment to the United States Constitution;

(B)    A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Religious Freedom Restoration Act;

(C)    A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Administrative Procedure Act;

(D)    A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Complaint;

(E)    An order declaring unlawful and setting aside Defendants' vaccination policies;

(F)    Actual damages, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), in the amount of pay Plaintiff will lose as a result of Defendants' discriminatory vaccine policies under the Religious Freedom Restoration Act;

(G)    Nominal damages against Defendants in their individual capacities, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), for the violation of Plaintiff's rights under the Religious Freedom Restoration Act;

(H)    Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(I)    All other further relief to which Plaintiff may be entitled.

                    Respectfully Submitted,
                    Tully Rinckey, PLLC


                    *Sean C Timmons*

37

Sean C. Timmons, Esq., LL.M
Managing Partner Tully Rinckey, PLLC
Military and National Security Law Attorney
2925 Richmond Ave 12th Floor
Houston, Texas 77098
(832) 240-3273 Phone
(832) 241-5998 Fax
Admitted to practice law in Texas and New York